In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-04-146 CR


____________________



TOBIAS D-HUN KELSON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 87401






OPINION


 Appellant, Tobias D-Hun Kelson, prosecutes this direct appeal from his conviction
for Aggravated Assault. Appellant's guilt was determined by a jury with his punishment
set by the trial court at confinement for life in the Texas Department of Criminal Justice -
Correctional Institutions Division. (1) Appellant raises two issues for our consideration: 

 1. Whether the trial court abused its discretion in its denial of Appellant's
Special Plea of Double Jeopardy and Pre-Trial Application for Habeas
Corpus Seeking Relief From Double Jeopardy.


 2. Whether the trial court erred by denying Appellant's Motion For Mistrial.


 The record reflects that the trial from which this appeal proceeds was the State's
second attempt to obtain a conviction on the aggravated assault charge. Appellant moved
for and was granted a mistrial in the first trial. Prior to commencement of the second trial,
appellant filed a "Special Plea of Double Jeopardy," and a "Pre-Trial Application for Writ
of Habeas Corpus Seeking Relief From Double Jeopardy." Both instruments were filed
under the same trial cause number, "87401." The trial court later conducted a brief
hearing on appellant's special plea and writ application at which time appellant tendered
a transcribed copy of the recorded testimony taken at the first trial. No further evidence
was tendered either by appellant or the State. By agreement of the parties and the trial
court, the cause was reset to allow the State to respond to certain case-authority provided
to the court by appellant. 

 The record before us contains a written reply by the State along with an affidavit
from the prosecuting attorney whose questioning triggered the events that ultimately led
to the mistrial being declared. (2) On November 25, 2003, the trial court issued a written
order. This order carefully analyzed the extant authority on whether retrial of a criminal
defendant is proper in the face of a mistrial granted upon request of a defendant based on
prosecutorial misconduct. The trial court concluded the written order by denying relief
on both the special plea and the separate habeas corpus request. Thereafter, a jury trial
was conducted resulting in appellant's conviction for aggravated assault and life sentence
in the penitentiary. His first issue complains of trial court error in the denial of his special
plea and his writ relief, but combines argument and authority in presenting the issue to us.
Relying on a line of cases from the United States Supreme Court and the Court of Criminal
Appeals, appellant contends his second trial was barred by the doctrine of double jeopardy
because: 1) the prosecutor's misconduct was manifestly improper; 2) it was committed
with the requisite mental state; and, 3) therefore violated the standards discussed in Ex
parte Peterson, 117 S.W.3d 804, 817-19 (Tex. Crim. App. 2003). Prior to addressing the
merits of issue one, we must first resolve the threshold inquiries of jurisdiction and
cognizability. See Castaneda v. State, 138 S.W.3d 304, 307 (Tex. Crim. App. 2003)
(appellate courts have authority to consider and address issues which are not directly raised
by the parties but must be considered and decided in the course of reviewing the issues
presented).


 The prohibition against double jeopardy is found in the Fifth Amendment to the
United States Constitution. A similar provision is set forth in art. I, § 14 of the Texas
Constitution. The Fifth Amendment prohibition against double jeopardy is fully applicable
to the States through the Fourteenth Amendment to the United States Constitution. See
Benton v. Maryland, 395 U.S. 784, 787, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). While
the State and Federal double jeopardy provisions have similar language, their application
has taken divergent paths since the Court of Criminal Appeals' opinion in Bauder v. State,
921 S.W.2d 696 (Tex. Crim. App. 1996) ("Bauder I"). See Peterson, 117 S.W.3d at 813-16.

 The Double Jeopardy Clause provides that no person shall "be subject for the same
offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This has
been interpreted so as to prevent: 1) a second prosecution for the same offense after
acquittal or after conviction (successive prosecutions); and 2) multiple punishments for the
same offense. See Monge v. California, 524 U.S. 721, 727-28, 118 S.Ct. 2246, 141
L.Ed.2d 615 (1998); United States v. Dixon, 509 U.S. 688, 695-96, 113 S.Ct. 2849, 125
L.Ed.2d 556 (1993); Bailey v. State, 87 S.W.3d 122, 126 (Tex. Crim. App. 2002). 
Although originating from the same source, the nature of these two areas of protection are
not necessarily coextensive. The contrast was noted in Gonzalez v. State, 8 S.W.3d 640,
643 n.9 (Tex. Crim. App. 2000):

 We have decided that a pretrial writ of habeas corpus is usually the
procedural vehicle by which a defendant should raise a "successive
prosecutions for the same offense" double jeopardy claim. See Ex parte
Robinson, 641 S.W.2d 552, 553-56 (Tex.Cr.App.1982) (defendant may in
pretrial writ of habeas corpus proceeding raise and appeal a successive
prosecutions claim before the trial of the indictment which he attacks); see
also Ex parte Apolinar v. State, 820 S.W.2d 792, 793-94 (Tex.Cr.App.
1991). This is because requiring a defendant to go through trial before
appealing a successive prosecutions claim is inconsistent with one double
jeopardy guarantee against being consecutively tried for the same offense. 
See Robinson, 641 S.W.2d at 554. These considerations do not apply to a
multiple punishments claim because it "can be fully vindicated on an appeal
following final judgment." See id. 


 The Apolinar decision goes directly to the heart of our threshold inquiries. 
Apolinar, 820 S.W.2d at 792. The defendant in Apolinar filed a special plea in the trial
court alleging his first trial, which resulted in a mistrial, was improperly terminated and,
therefore, a second trial was prohibited as a successive prosecutions double jeopardy
violation. See id. at 793. Apolinar's "special plea" was filed pursuant to Tex. Code
Crim. Proc. Ann. art. 27.05(3) (Vernon 1989), which provides, in pertinent part:

 A defendant's only special plea is that he has already been prosecuted
for the same or a different offense arising out of the same criminal episode
that was or should have been consolidated into one trial, and that the former
prosecution: . . . (3) was improperly terminated[.]


 Thereafter, the trial judge, in a pretrial determination, denied Apolinar's special
plea. Apolinar, 820 S.W.2d at 793. Apolinar appealed this interlocutory ruling directly
to the San Antonio Court of Appeals. Id. The San Antonio Court interpreted the "special
plea" as a pretrial writ of habeas corpus, found jurisdiction, and addressed the merits of
the appeal. Id. In holding the court of appeals did not have jurisdiction to entertain
Apolinar's appeal, the Court of Criminal Appeals discussed the nature and scope of a
defendant's "special plea" under article 27.05:

 A defendant may file a special plea in order to assert a former
jeopardy claim. Article 27.05, V.A.C.C.P. However, all issues of fact
presented in the special plea are to be tried by the trier of fact on the trial on
the merits. Article 27.07, V.A.C.C.P. The appellant in this case appealed
from the trial court's ruling on the special plea prior to trial on the merits. 


Id. Indeed, as the Court further noted, special pleas of former jeopardy are only
applicable when the former jeopardy claim involves successive punishments claims, not
successive prosecutions claims. Id. at 794. In support of this observation, the Court
quoted the following from the Fifth Circuit case, Robinson v. Wade, 686 F.2d 298, 302
n.3 (5th Cir. 1982):

 Texas law provides that a claim of former jeopardy may be raised at the
inception of the prosecution under attack, but that the facts concerning the
special Plea are determined in the course of the trial on the merits, See
Vernon's Ann.C.C.P. art. 27.05 & 27.07 (1966 & Supp. 1981). The Plea
is a mechanism for avoidance of reconviction, not retrial. In its limited
function, it falls short of the protections extended to criminal defendants by
the double jeopardy clause of the fifth amendment, Baker v. Metcalfe, 633
F.2d 1198, 1200 n.3 (5th Cir.), cert. denied, 451 U.S. 974, 101 S.Ct. 2055,
68 L.Ed.2d 354 (1981), citing Abney v. United States, 431 U.S. 651, 661,
97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977), as applicable to the states
through the fourteenth amendment, Benton v. Maryland, 395 U.S. 784, 89
S.Ct. 2056, 23 L.Ed.2d 707 (1969).


Apolinar, 820 S.W.2d at 794 (emphasis added).

 The Court then discussed the proper procedural method for defendants to utilize
when seeking relief by way of a claim of double jeopardy based upon successive
prosecutions:

 The pretrial writ of habeas corpus, however, provides relief. Article
11.01, et seq., V.A.C.C.P. In Ex Parte Robinson, 641 S.W.2d 552 (Tex.
Cr.App.1982), relying on Abney v. United States, 431 U.S. 651, 97 S.Ct.
2034, 52 L.Ed.2d 651 (1977), this Court wrote, "We are compelled to hold
that there is a Fifth Amendment right not to be exposed to double jeopardy,
and that it must be reviewable before that exposure occurs." Id. at 555;
U.S. Const. amends. V and XIV; Art. 1, sec. 10, Tex. Const. This Court
then explained that a pretrial writ under Chapter 11, V.A.C.C.P. was the
mechanism to be utilized in seeking relief from exposure to double jeopardy. 


 Because the special plea procedure does not protect against retrial,
use of the pretrial writ of habeas corpus is the only way to protect a
defendant's fifth amendment right against twice being put to trial. 


Id. (emphasis added). Accord Lindley v. State, 838 S.W.2d 257, 258 n.1 (Tex. Crim.
App. 1992). 

 In the instant case, it is clear that appellant was seeking relief from "twice being put
to trial," and not from "multiple punishments." In Waldie v. State, 923 S.W.2d 152, 156
(Tex. App.--Beaumont 1996, no pet.), the trial court denied a pretrial "motion of double
jeopardy" based upon a claim of multiple punishments. In analyzing the appellant's claim
of trial error we stated:

 Double jeopardy may be raised either by a pretrial special plea
pursuant to Tex. Code Crim. Proc. Ann. art. 27.05 (Vernon 1989) or by
a pretrial writ of habeas corpus. The special plea protects only against
reconviction, not retrial. A defendant who seeks protection from retrial must
file a writ of habeas corpus. If the court grants the writ and thereafter denies
the relief requested, the defendant may take an immediate appeal.


Id. at 157. Accord State v. Lara, 924 S.W.2d 198, 201-02 (Tex. App.--Corpus Christi
1996, no pet.). 

 As previously indicated, threshold inquiries of jurisdiction and cognizability must
be disposed of before moving on to any substantive issues raised by the parties. This is
so because subject matter jurisdiction cannot be conferred by agreement of the parties;
jurisdiction must be vested in a court by constitution or statute. See State v. Roberts, 940
S.W.2d 655, 657 (Tex. Crim. App. 1996), overruled on other grounds, State v. Medrano,
67 S.W.3d 892, 903 (Tex. Crim. App. 2002). In the instant case, appellant is prosecuting
this appeal from the final judgment of conviction for aggravated assault. Our appellate
jurisdiction to consider the denial of his special plea by the trial court prior to
commencement of trial was invoked by appellant's timely notice of appeal. See State v.
Riewe, 13 S.W.3d 408, 410 (Tex. Crim. App. 2000). However, as noted above, because
a defendant's special plea is cognizable only as to former jeopardy claims of successive
punishments, appellant's special plea complaining of successive prosecutions failed to
present a legally cognizable issue for the trial court to submit to the jury. See Apolinar,
820 S.W.2d at 793; Collins v. State, 640 S.W.2d 288, 288-89, 291 (Tex. Crim. App.
1982); Arredondo v. State, 582 S.W.2d 457, 459 (Tex. Crim. App. 1979); Lara, 924
S.W.2d at 201-02. Although its basis for denying appellant's special plea differs from our
analysis and conclusion, the trial court did not err in its ruling.

 With regard to the trial court's denial of appellant's habeas corpus relief we note
that following the trial court's pretrial ruling on the writ, appellant had an immediate right
to appeal. See Ex parte McCullough, 966 S.W.2d 529, 531-32 (Tex. Crim. App. 1998);
Bowen v. State, 131 S.W.3d 505, 507-08 (Tex. App.--Eastland 2004, pet. ref'd); Green
v. State, 999 S.W.2d 474, 476 (Tex. App.--Fort Worth 1999, pet. ref'd); Waldie v. State,
923 S.W.2d at 157. Appellant, however, did not attempt an immediate appeal but instead
proceeded with a jury trial which resulted in his conviction. Only now, after he has
permitted himself to be subjected to a full and complete second trial, does he prosecute an
appeal the basis of which is that the double jeopardy clause provided him with an absolute
bar to a second trial. 

 It is not apparent from the record that the full import of a habeas corpus action was
appreciated by the parties. Habeas corpus proceedings are separate and distinct
proceedings independent of the cause instituted by the presentation of an indictment or
other forms of the State's pleadings. See Green, 999 S.W.2d at 477. Such habeas corpus
proceedings should be docketed separately from the substantive cause and given a different
cause number. Id. An appeal from an order denying relief is not an interlocutory appeal
from the substantive cause arising out of an indictment, felony information, or complaint
and information. Id. Furthermore, the purpose of a pretrial habeas corpus application is
not to facilitate some defensive position at the trial, but to stop the trial and secure
immediate release from confinement. Id. See also Apolinar, 820 S.W.2d at 794
("Because the special plea procedure does not protect against retrial, use of the pretrial
writ of habeas corpus is the only way to protect a defendant's fifth amendment right against
twice being put to trial.")(emphasis added).

 As noted above, the trial court's order denying appellant's habeas corpus relief was
rendered on November 25, 2003. Under the current rules of appellate procedure, appeal
must be perfected within 30 days of the date an appealable order is entered. See Tex. R.
App. P. 26.2(a)(1). No motion for new trial was timely filed with regard to the trial
court's November 25, 2003, order. Therefore, appellant's notice of appeal from the order
denying him habeas corpus relief was due on or before December 29, 2003. (3) Notice of
appeal was filed in the instant cause on March 5, 2004. Appellant's notice of appeal with
regard to the order denying habeas corpus relief is untimely and does not invoke this
Court's appellate jurisdiction. See White v. State, 61 S.W.3d 424, 427-28 (Tex. Crim.
App. 2001). We therefore dismiss that part of issue one complaining of the trial court's
order denying habeas corpus relief for lack of appellate jurisdiction. Furthermore, we find
no error by the trial court in denying that part of issue one complaining of the denial of the
special plea to the jurisdiction as special pleas are cognizable only as to former jeopardy
claims of successive punishments, not successive prosecutions as was the circumstance
facing appellant. Issue one is overruled.

 The basis for issue two stems from "bewildering" circumstances which took place
during appellant's second trial. Following the lunch-time recess, it was discovered that
a non-attorney, student-intern with the District Attorney's Office, was seated among the
jury panel in the jury deliberations room waiting for the trial to re-commence. The trial
court permitted both parties to question the student-intern under oath. The student-intern
testified that she came back from lunch, entered the jury room, said "hello," and sat down. 
She recalled that the extent of any "conversation" with any of the jurors consisted of
saying "hello, and then a few people had conversations about the weather and just general
things, but nothing concerning this case." As she had been introduced to the jury by one
of the prosecuting attorneys prior to the start of testimony, the panel presumably knew of
the student-intern's connection with the District Attorney's Office. On cross-examination,
her sworn testimony was that she was unaware she was not supposed to be in the room
with the jurors, although she did recall being present during voir dire when the State's
attorney explained to the venire that the parties could not converse nor have any contact
with the jury during the trial. No other witnesses were called to testify nor requested by
either party. Appellant's motion for mistrial was tentatively denied subject to further
authority presented to the trial court at a later time. 

 "No person shall be permitted to be with a jury while it is deliberating. No person
shall be permitted to converse with a juror about the case on trial except in the presence
and by the permission of the court." Tex. Code Crim. Proc. Ann. art. 36.22 (Vernon
1981). "When a juror converses with an unauthorized person about the case, 'injury to
the accused is presumed' and a new trial may be warranted." See Quinn v. State, 958
S.W.2d 395, 401 (Tex. Crim. App. 1997). "However, appellant has the burden of
proving the allegation of juror misconduct." See Hughes v. State, 24 S.W.3d 833, 842
(Tex. Crim. App. 2000); Patrick v. State, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995). 
"Determinations of historical fact and assessment of witness credibility and believability
are left almost entirely to the discretion of the trial judge, and where there is conflicting
evidence there is no abuse of discretion if the motion for mistrial is overruled." See
Hughes, 24 S.W.3d at 842. In the instant case, the testimony of the student-intern was not
contradicted. Her testimony indicated that there was no discussion of the case in her
presence during the time she sat amongst the jury panel. Furthermore, there was no
indication that anything prejudicial to appellant was said by anyone during the incident in
question. Accordingly, the presumption of harm that arose from the unauthorized
conversation between the student-intern and the members of the jury panel was rebutted
by a showing that nothing regarding the case was discussed. See Alba v. State, 905
S.W.2d 581, 587 (Tex. Crim. App. 1995). 

 During the charge conference, the trial court definitively denied appellant's motion
for mistrial with the comment that nothing in the record indicated there was any improper
conversation or improper influence on the jury as a result of the student-intern's
unauthorized contact with the panel. Without objection from appellant, a curative
instruction was included in the written charge provided to the jury during their
deliberations. Said instruction reads as follows: 

 PRESENCE OF INTERN:


 During the trial, the prosecutors [sic] intern [student-intern's name]
entered the jury room. You are instructed that you must completely
disregard the intern's presence in the jury room or any remarks made by the
intern while there in reaching a verdict in this case.


 "A mistrial is a device used to halt trial proceedings when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile." See Ladd v. State,
3 S.W.3d 547, 567 (Tex. Crim. App. 1999); Adams v. State, 156 S.W.3d 152, 157 (Tex.
App.--Beaumont 2005, no pet.). "We review the denial of a motion for mistrial under an
abuse of discretion standard." Adams, 156 S.W.2d at 157 (citing Wead v. State, 129
S.W.3d 126, 129 (Tex. Crim. App. 2004)). "To determine whether a given error
necessitates a mistrial, the reviewing court examines the particular facts of the case." Id. 
"In most instances, the trial court's instruction to disregard cures any harm." Id. 
Appellant did not object at trial that the curative instruction was insufficient. When a trial
court instructs a jury to disregard something which has occurred in its presence, an
appellate court must presume the jury followed the trial court's instructions. See Waldo
v. State, 746 S.W.2d 750, 752-53 (Tex. Crim. App. 1988). Only for "highly prejudicial
and incurable errors" is a mistrial appropriate. See Simpson v. State, 119 S.W.3d 262,
272 (Tex. Crim. App. 2003), cert. denied, Simpson v. Texas, ___ U.S. ___, 123 S.Ct.
2837, 159 L.Ed.2d 270, 72 U.S.L.W. 3749 (2004). 

 There was no abuse of discretion by the trial court in denying appellant's motion
for mistrial. Issue two is overruled. The judgment of the trial court is affirmed.

 AFFIRMED.



 ______________________________

 STEVE MCKEITHEN

 Chief Justice



Submitted on May 11, 2005

Opinion Delivered June 29, 2005

Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Appellant's punishment exposure was raised to a first degree felony as he pleaded
true to a prior felony conviction alleged in his indictment for enhancement purposes. See
Tex. Pen. Code Ann. §§ 22.02(a)(2), (b) & 12.42(b) (Vernon Supp. 2005). 
2. As there is the notation "No File Mark" on the State's written reply, it is unclear
if it was ever before the trial court for consideration. As our decision in this appeal is not
dependent on this reply, the legal significance of the missing file mark is of no
consequence. 
3. If the act to be done is filing a document, and if the clerk's office where the
document is to be filed is closed or inaccessible during regular business hours on the last
day for filing the document, the period for filing the document extends to the end of the
next day when the clerk's office is open and accessible. See Tex. R. App. P. 4.1(b). We
take note of the fact that all offices in the Jefferson County Courthouse were closed on
Thursday, December 25, 2003, and on Friday, December 26, 2003, and did not reopen
until Monday, December 29, 2003.